**Affirmed and Memorandum Opinion filed July 11, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-22-00025-CV

## IN THE INTEREST OF E.A.D., A CHILD

**On Appeal from the 315th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-02136J**

## MEMORANDUM OPINION

Mother appeals the trial court's final order terminating her parental rights as to her eleven-year-old daughter, E.A.D. ("Elsea"). Though Mother agrees that she did not meet the requirements of the court-ordered service plan, she still seeks to reverse the trial court's judgment in her challenge to the sufficiency of the evidence in support of the trial court's best interest findings. To avoid future collateral consequences in connection with the trial court's endangerment findings, Mother also challenges the sufficiency of the evidence to support those predicate grounds. We affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

When Elsea was 9 years old, in June of 2020, Department of Family and Protective Services (the "Department") received an intake that Elsea, Mother, and Elsea's Grandmother were living in a home in "deplorable" condition where it was uncertain if the home had working utilities. The investigator learned Mother was "never" home and left the child with Grandmother who had Alzheimer's. At that time, Mother agreed to have supervised visits and have a family friend, Tasmin, become the primary protective caregiver.

A few months later, on November 7, 2020, an officer with the Houston Police Department received a dispatch from a family member about Mother. The family member called stating when he returned home from vacation he found Mother in his home among narcotics.

When the HPD officer arrived at the home, he saw "multiple … illicit narcotics." At trial he explained that he saw some drugs in what looked like a makeup case and also some in "plain view" on the mantel in the living room. He stated they believed the drugs to be either ecstasy or methamphetamine.

When the officer first arrived, Mother and Elsea were present. However, promptly stated Mother she was going to the store and never returned, leaving Elsea behind. At trial, she admitted that she left and Elsea stayed in the home. Elsea confirmed to the officer that she had been living in that home with Mother. The officer stated he had reason to believe the illegal substances found belonged to Mother.

Not long thereafter, on November 9, 2020, the Department filed an original petition seeking termination of Mother's parental rights and the court signed an order appointing the Department as the child's emergency temporary managing

2

conservator.

On December 7, 2020, an adversary hearing was held and the court's order noted that Mother appeared in person with her attorney. The court signed an order at the conclusion of that hearing finding there was a danger to the physical health or safety of the child caused by a person entitled to the child's possession and it was contrary to the welfare of the child to remain in the home. The order also recited there was an urgent need that required the child's immediate removal and notwithstanding reasonable efforts to eliminate the need for removal there was a substantial risk of a continuing danger if the child was returned home. The order continued the Department's appointment as the child's temporary managing conservator.

On January 15, 2021, a service plan was filed with the court for Mother. The plan was signed by the Department's worker and supervisor but was not signed by Mother. The plan stated the Department's hope was that Elsea could be placed in a safe and stable environment with proper medical care and free from drug use. In that connection, under "CHILD… NEEDS" the plan noted Elsea had a heart condition requiring her to take medication and wear a pacemaker. The plan expressed concern about Mother's drug use, ability to provide suitable housing, ability to provide basic care for the child and inability to care for Elsea's medical condition. The plan added there was concern about the mom's coping and mental health needs due to her extensive drug use.

The court issued a service plan which required Mother to: (1) maintain safe and stable housing for no less than six months and provide the Department with a copy of the lease; (2) maintain contact with current caseworker, attend all court hearings, visitations and planning sessions, and update the caseworker on address, phone number, work schedule and other changes that may impact the caseworker's

ability to maintain contact and schedule appointments; (3) maintain employment for no less than six months and provide the Department with pay stub proof monthly; (4) participate in a drug assessment and follow its recommendations; (5) participate in random urine and hair follicle testing upon instruction by caseworker; (6) attend and provide proof of attendance of Narcotics Anonymous group; (7) participate in psychosocial assessment and follow its recommendations; (8) refrain from criminal activity.

The case was called to trial on November 9, 2021. Undisputed evidence showed that Mother substantially failed to comply with the plan, as she did not complete any of her services outside of appearing for court hearings and (eventually) drug tests.

The Department caseworker assigned to the case at the time of trial, Tamara Smith, testified Elsea was in a foster home at that time and doing really well. She commented that Elsea showed her she was making A's and B's on her report card, and was interested in crafts, jewelry making and face painting. She stated that Elsea was bonded to her caregiver, called her by her first name and mom and referred to her foster siblings as sister and brother.

Tamara testified that there was a recent intake in that home where the caregiver was called because Elsea was under the covers and she was not sure if the foster brother was touching Elsea inappropriately. Tamara added she spoke to Elsea who said it was nothing, he did not touch her and it was blown out of proportion. After investigation, the case was ruled out, but Tamara explained that there was a safety plan and the caregiver went to additional training for parenting children victims of sexual abuse. Tamara indicated that additional training was necessary because the foster siblings also were victims of sexual abuse.

Tamara noted that Elsea just started some therapies they hope will help

Elsea, including music and art therapy. She also has therapy at the Child Advocacy Center to address sexual abuse allegations. The caregiver indicated her behavior improved tremendously. Tamara stated the child is bonded to her caregiver and calls her mom. As of the time of trial, Elsea's current foster caregiver remained unsure if she would adopt Elsea. Tamara stated that she submitted Elsea for a legal broadcast and their plan was for unrelated adoption. Tamara acknowledged she had not been personally successful with hits for a legal risk broadcast involving a 10-year-old with serious past trauma.

Tamara stated during the entire time the Department was involved Mother had one drug test and after reviewing its results, she had concerns about her sobriety.

Mother admitted to using narcotics, but refused to admit the narcotics found in the home by the officer were hers. She testified that she had relapsed during the case. She acknowledged throughout this case while her child was in the Department's custody, she continued to use. She added: "Who wouldn't? My God." Mother blurted out the unsolicited comment, "The allegations of how I'm prostituting my daughter out, I would never do that. It's – I feel like I've been portrayed as a monster and I'm not. I'm not a monster."

A Child Advocate representative assigned to the case testified that she had met with Elsea and that that she was doing well, was adjusted and her behavior issues improved notably through the progress of the case. She testified that Elsea did not express a sincere desire to speak with her mom again after visitations were cancelled "due to allegations of sexual abuse of her daughter while in her care."

At the conclusion of trial, the court signed an order terminating Mother's parental rights pursuant to Texas Family Code, Sections 161.001(b)(1)(D), (E), (O) and (2). This appeal followed.

## II. ISSUES AND ANALYSIS

A court may terminate the parent-child relationship if the court finds by clear and convincing evidence that (1) the parent has engaged in at least one statutory predicate act and (2) termination is in the best interest of the child. *See In re N.G.*, 577 S.W.3d 230 (Tex. 2019); *In re L.C.L.*, 599 S.W.3d 79, 83 (Tex. App.—Houston [14th Dist.] 2020) (en banc), *pet denied*, 629 S.W.3d 909 (Tex. 2021); *see also* Tex. Fam. Code § 161.001(b).

Mother raises three issues. In her first two issues, Mother aims to avoid future collateral consequences the trial court's judgment could have on her parental rights to other children by challenging the legal and factual sufficiency of the evidence to support the trial court's finding of the two endangerment-predicate grounds for termination. In her third issue, Mother seeks to retain her parental rights to Elsea by challenging exclusively the factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b)(2).

## A. Standard of Review

Termination of the parent-child relationship is a drastic remedy and is of such weight and gravity that due process requires the state to justify termination by clear and convincing evidence. *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002); *see also In re L.G.R.*, 498 S.W.3d 195, 201 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Tex. Fam. Code § 101.007. This heightened burden of proof results in a heightened standard of review when evaluating the sufficiency of the evidence. *In re L.G.R.*, 498 S.W.3d at 202.

Under a legal sufficiency review, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *See In re Commitment of Stoddard*, 619 S.W.3d 665, 674 (Tex. 2020).

Evidence is factually insufficient if, in light of the entire record, "the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *In re J.F.C.*, 96 S.W.3d at 266.

**B. Is the trial court's order terminating Mother's parental rights supported by legally and factually sufficient evidence to support termination of parental rights under 161.001(b)(1)(D) or (E)?**

Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there also is a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re L.E.R.*, No. 14-21-00590-CV, 2022 WL 1088592, at *8 (Tex. App.—Houston [14th Dist.] Apr. 12, 2022, no pet. h.). Although Mother has conceded the trial court's predicate ground under Subsection (O), we must address the trial court's endangerment findings under section 161.001(b)(1)(D) or (E) because she has challenged the sufficiency of the evidence to support those findings which may have collateral consequences to Mother at a later time. *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam); *Interest of P.W.*, 579 S.W.3d 713, 720 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

7

Termination of parental rights is warranted if the factfinder finds by clear and convincing evidence, in addition to the best-interest finding, that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child" or "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(b)(1)(D), (E). "To endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996).

**1.** *Endangerment by Environment.*

By making a finding under subsection D, the court concluded that Mother knowingly placed or knowingly allowed Elsea to remain in conditions or surroundings which endangered Elsea's physical or emotional well-being. See Tex. Fam. Code § 161.001(b)(1)(D). Inappropriate, abusive, or unlawful conduct by a parent or other persons who live in the home can create an environment that endangers the physical or emotional wellbeing of a child. *In re L.E.R.*, 2022 WL 1088592, at *9. A single act or omission may be sufficient to support termination under subsection D. *Id.* In evaluating endangerment under subsection D, the court must consider the child's environment before the Department obtained custody. *Id.* Subsection D is not a basis for termination of parental rights if the parent was unaware of the endangering environment. *In re V.A.*, 598 S.W.3d 317, 329 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). There must be clear and convincing evidence of endangerment as well as of the parent's awareness of the endangering environment. *Id.* Although the parent need not have certain knowledge that an actual injury is occurring, the parent must at least be aware of the potential for danger to the child in such an environment and must have

disregarded that risk. *In re A.S.*, 261 S.W.3d 76, 83 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

The evidence relevant environmental endangerment under subsection D illustrated Mother's neglect or reckless disregard of Elsea's particular needs as a nine year old who's life depends on a pacemaker and the regular administration of cardiac medication. Though mother testified that she was aware of Elsea's medical condition and testified that she had taken her to all her checkups and made sure that she had medicine, she provided no explanation for how Elsea's needs were provided for in her extensive absence. Mother did not address how Elsea's special medical needs were addressed in conjunction with evidence that Mother was rarely home with Elsea and left her in the care of Grandmother with Alzheimer's.

If Mother possessed facts to disprove the alarms that would alert a reasonable person of the risks these circumstances exhibited, she did not present them to the caseworker at the time or present them at trial. Namely, to ameliorate concerns of her absence, Mother presented no evidence she possessed means of observing Elsea remotely at the house, or that she established any emergency plan in her absence. Even assuming Grandmother (in light of her condition) did not present additional harm to Elsea, there was no explanation as to the degree of Grandmother's Alzheimer's and whether she could be relied upon to care for Elsea in any manner. With respect to the second occurrence, Mother failed to provide any testimony that, prior to fleeing from law enforcement, Mother informed the police of Elsea's condition or made any other arrangements.

Despite Mother's denial of use or possession of the narcotics at the time of removal, the evidence of Mother's neglect was significant: In the first incident, Elsea was found home without anyone responsible for caring for her special needs; in the second incident, Mother and Elsea were found an apartment where narcotics

9

appeared in plain view. These facts, taken with testimony connecting Mother to those illicit narcotics at the time of the Department's second referral establish the reasonable conclusion that Mother was living a life that she knew increased the probability of her incarceration. Subjecting children to the probability that they will be left alone because their parent is in jail endangers children's physical and emotional wellbeing. *See In re L.M.*, 572 S.W.3d 823, 834 & n.4 (Tex. App.— Houston [14th Dist.] 2019, no pet.). A factfinder reasonably could find that this conduct subjected Elsea to a probability of being left alone or without anyone capable of tending to Elsea's medical needs. *See In re S.R.*, 452 S.W.3d at 360-61.

This evidence of Mother's actions, including neglecting Elsea and her special medical condition, exposing Elsea to illegal substances and the possibility of being left alone, would support a finding that Mother knowingly placed or knowingly allowed Elsea to remain in conditions or surroundings which endangered her physical or emotional wellbeing. Considered in the light most favorable to the trial court's finding, the evidence is legally sufficient to support the trial court's determination that termination of Mother's parental rights was justified under section 161.001(b)(1)(D). Further, in view of the entire record, we conclude the disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was warranted under section 161.001(b)(1)(D). Accordingly, we conclude the evidence is legally and factually sufficient to support the subsection (D) finding.

Appellant's first issue is therefore overruled.

## 2. *Endangerment by Conduct.*

By making the subsection (E) finding, the judge determined that Mother had engaged in conduct or knowingly placed Elsea with persons who engaged in conduct that endangered Elsea's physical or emotional well-being. Tex. Fam. Code

Ann. § 161.001(b)(1)(E). A finding of endangerment under subsection (E) requires evidence that the endangerment resulted from the parent's conduct, including acts, omissions, or failures to act. *In re S.R.*, 452 S.W.3d at 361. Unlike subsection (D), termination of the parent-child relationship under subsection (E) must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *Id.* A court properly may consider actions and inactions occurring both before and after a child's birth to establish a course of conduct. *In re A.L.H.*, 515 S.W.3d 60, 91 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

Much of the evidence discussed as relevant to subsection (D)—neglect (of the child's special needs) and drug use—is also relevant to our analysis of whether Mother engaged in conduct that endangered the physical or emotional wellbeing of Children under subsection E. *See, e.g., Interest of J.D.G.*, 570 S.W.3d 839, 852 (Tex. App.—Houston [1st Dist.] 2018, pet. denied)(noting that failure to provide appropriate medical care for a child may constitute endangering conduct under Subsection (E) even if the parent did not cause the need for medical treatment); *In re J.O.A.*, 283 S.W.3d at 345 (explaining that a parent's drug use and its effect on his or her parenting may qualify as an endangering course of conduct); *In re A.A.C.*, No. 14-19-00560-CV, 2019 WL 6913327, at *6 (Tex. App.—Houston [14th Dist.] Dec. 19, 2019, no pet.) (mem. op.) (explaining that evidence of criminal conduct, convictions, imprisonment, and their effects on a parent's life and ability to parent, and routinely subjecting children to the probability that they will be left without their parent endangers children's physical and emotional wellbeing).

These same facts established Mother engaged in a course of conduct endangering to her child for a finding under Subsection E. Moreover, there were

11

additional facts concerning Mother's illegal drug conduct that further established this finding.

Beginning early in the case, Mother refused to submit to numerous tests requested by the Department after that became part of the court ordered family service plan. *In re E.W.*, No. 14-19-00666-CV, 2020 WL 742327 (Tex. App. – Houston [14th Dist.] 2020, pet. denied) (a parent's refusal to submit to drug testing may be treated by the court as if the parent tested positive for drugs).

Mother did not submit to a court ordered drug test until almost nine months after the child was removed. The lab confirmed the samples collected from Mother's urine at that time were positive for methamphetamines and amphetamines. The lab report also confirmed her hair samples were positive for those drugs as well as marijuana. Subsequently, Mother again refused further drug tests; on those facts the trier of fact was entitled to infer that Mother did not test because she continued to use drugs. *In re E.W.*, No. 14-19-00666-CV, 2020 WL 742327 (Tex. App. – Houston [14th Dist.] 2020, pet. denied). Continued illegal drug use after a child's removal jeopardizes parental rights and may be considered as establishing an endangering course of conduct. *Cervantes–Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253–54 (Tex. App.–Houston [1st Dist.] 2006, no pet.) (en banc). There was no disputed fact of significance to weigh against this proof that supported the fact finder's firm belief or conviction that Mother would have known her conduct jeopardized reunification.

At trial, Mother admitted she used marijuana more than methamphetamine while Elsea was in CPS custody. She qualified the statement, making clear the abuse was voluntary and deliberate: "Who wouldn't? My God." *See In re V.L.F.*, No. 14-18-00588-CV, 2018 WL 6614168 *10 (Tex. App. – Houston [14th Dist.] 2018, no pet.) ("Illegal drug use creates the possibility that the parent will be

12

impaired or imprisoned and thus incapable of parenting … Drug use and the imprisonments relating to it harm the physical and emotional well-being of a child."); *In re L.M.R.*, No. 14-17-00597-CV, 2018 WL 285121 *6 (Tex. App. – Houston [14th Dist.] 2018, pet. denied) (mem. op.) ("[c]ontinued illegal drug use after a child's removal jeopardies parental rights and may demonstrate an endangering course of conduct."). Evidence of this kind of deliberate and voluntary drug use combined with other endangering conduct noted is distinguishable from an endangerment finding based merely on failed drug tests. *Interest of L.C.L.*, 599 S.W.3d 79, 84 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (en banc)(the sole basis for termination was that the mother "tested positive for drugs both initially and throughout the proceedings.")

This evidence, considered altogether in addition to the evidence supporting the endangerment finding under subsection D, would support a finding that Mother had a history of drug use, neglect, and unstable living conditions that endangered the children and would continue to engage in such behavior. We conclude that under these circumstances, the factfinder could have formed a firm belief or conviction that its endangerment finding under subsection (E) was true. *E.g., In re J.B.*, 2021 WL 1683942, at *6; *In re J.O.A.*, 283 S.W.3d at 344. Considered in the light most favorable to the trial court's finding, the evidence is legally sufficient to support the trial court's determination that termination of Mother's parental rights was justified under section 161.001(b)(1)(E). Further, in view of the entire record, we conclude the disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was warranted under section 161.001(b)(1)(E). Accordingly, we conclude the evidence is legally and factually sufficient to support the subsection (E) finding.

We therefore overrule appellant's second issue.

**C. Is the trial court's order terminating Mother's parental rights supported by factually sufficient evidence to support the trial court's finding that termination is the best interest of child?**

There is a strong presumption that the best interest of the child is served by keeping the child with their natural parents. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing Tex. Fam. Code Ann. § 153.131(b)); *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). However, prompt and permanent placement of the child in a safe environment is also presumed to be in the children's best interest. *In re S.R.*, 452 S.W.3d at 366 (citing Tex. Fam. Code Ann. § 263.307(a)). Proof of acts or omissions under section 161.001(b)(1) is probative of the issue of the children's best interest. *See id*. The considerations that the factfinder may use to determine the best interest of the children, known as the *Holley* factors, include:

(1) the desires of the child;

(2) the present and future physical and emotional needs of the child;

(3) the present and future physical and emotional danger to the child;

(4) the parental abilities of the person seeking custody;

(5) the programs available to assist the person seeking custody in promoting the best interest of the children;

(6) the plans for the child by the individuals or agency seeking custody;

(7) the stability of the home or proposed placement;

(8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and

(9) any excuse for the parent's acts or omissions.

*See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (interpreting former Tex. Fam. Code § 15.02 (since amended)); see also Tex. Fam. Code Ann. § 263.307(b) (listing factors to be considered in evaluating "whether the child's parents are willing and able to provide the child with a safe environment").

14

Section 263.307 factors relevant to our evaluation in this case include: the evidence concerning the subject child's age and physical and mental health vulnerabilities, the history of substance abuse, evidence regarding the parent's willingness to seek counseling services, and cooperate under the agency's close supervision; the evidence related to the parent's willingness and ability to effect positive environmental and personal changes within a reasonable period of time and evidence concerning whether the parent demonstrates adequate parenting skills, including providing minimally adequate health care, supervision, a safe physical home environment and understanding of her child's needs and capabilities. Tex. Fam. Code § 263.307(b)(1), (8), (10), (11) and (12). A best-interest finding does not require proof of any unique set of factors or limit proof to any specific factors. *See Holley*, 544 S.W.2d at 371–72.

*The child's age, vulnerabilities and special needs*

Elsea was just 9 years old when the referrals came in before her removal and a little over 10 years old at trial in November of 2021. A trier of fact could conclude from the proof of Elsea's age that she requires a caregiver who can provide the nurture and care necessary for a child of that age.

Elsea also has special physical issues that make her vulnerable without proper attention, because she has a heart condition, a pacemaker and requires close monitoring. She also has hearing loss in one ear and takes medication for her heart condition.

Elsea further has some specific learning and behavioral needs. She qualifies for special education services and requires accommodations. It was also noted that a disclosure of sexual abuse was generated fairly early in this case in April of 2021 when Elsea had a forensic interview. The details of the sexual abuse disclosure were not expressly stated at trial. However, the Department documented that the

15

mother's visits were cancelled as of April 2020 "due to allegations of sexual abuse of her daughter while in her care." Additionally, at trial Mother interjected the statement: "The allegations of how I'm prostituting my daughter, I would never do that. It's – I feel like I've been portrayed as a monster and I'm not."

Elsea was diagnosed with unspecified psychosexual disorder, oppositional defiant disorder, adjustment disorder with mixed anxiety and depressed mood, child sexual abuse suspected, confirmed neglect and attention deficit hyperactivity disorder. The Department documented that Elsea was receiving individual therapy during this case. Elsea was provided art therapy, music therapy and therapy at the Child Advocate Center to address the sexual abuse allegations. The Child Advocate Report also noted play therapy to be beneficial due to the disclosures. All of this evidence indicated Elsea was particularly vulnerable due to her special needs and, as such, required special attention and care.

As a result of Elsea's young age and these special needs, the factfinder was free to take into account that she required a caregiver able and willing to provide for a young child with special needs.

*The child's emotional and physical needs now and in the future*

A fact finder may infer from a parent's past inability to meet the child's physical and emotional needs that the parent is unable or unwilling to meet the child's needs in the future. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) Evidence of a parent's unstable lifestyle can support a factfinder's conclusion that termination of parental rights is in the child's best interest. *In re S.B.*, 207 S.W.3d 877, 887 (Tex. App.—Fort Worth 2006, no pet.). Lack of stability, including a stable home, supports a finding that the parent is unable to provide for a child's emotional and physical needs. *See In re G.M.G.*, 444 S.W.3d 46, 59–60 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see*

16

*also Doyle v. Tex. Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 398 (Tex. App.—El Paso 2000, pet. denied) (parent's failure to provide stable home and provide for child's needs may contribute to finding that termination of parental rights is in child's best interest). Evidence already discussed in support of the predicate findings, however, shows Mother is unable or unwilling to accommodate Elsea's special needs on a regular basis. Proof under Subsection D established Mother had a pattern of leaving her child in unsafe situations. The proof under Subsections E also showed she was unwilling or unable to do what was necessary to provide for her child, because she engaged in illegal drug use, unstable living situations and did not do anything to address her issues to secure prompt reunification under a court ordered plan.

Mother claimed she was starting to address her drug issue about a month before trial. In deciding a parent's willingness to provide a safe home, we consider whether the parent effects personal changes *within a reasonable time*. See Tex. Fam. Code 263.307(b)(11). Elsea had already been in the Department's care for over nine months when Mother finally submitted to an assessment for her drug use. Mother indicated she was referred for inpatient rehab but never explained why she had not started earlier. The court could reasonably conclude that was too late to demonstrate Mother was sincere in her willingness to provide a safe home for Elsea. A reasonable factfinder could conclude Mother was not willing to do what was necessary to address her issues for her child's welfare.

Mother failed to maintain a stable home during this case; she testified she was staying with a friend at the time of trial, and though she claimed she was working she never provided proof of income. *See In re C.A.J.,* 122 S.W.3d 888, 894 (Tex. App.—Fort Worth 2003, no pet.) ("Without stability, income, or a home, [a parent] is unable to provide for the child's emotional and physical needs.").

17

In light of these considerations, we conclude evidence implicating the second factor shows that termination of Mother's parental rights support the best-interest finding.

*The emotional and physical danger to the child now and in the future*

A parent's drug use supports a positive finding on the third *Holly* factor that termination is in the best interest of the child. *Interest of D.M.M.*, No. 14-18-00750-CV, 2019 WL 546029, at *8 (Tex. App.—Houston [14th Dist.] Feb. 12, 2019, pet. denied). The factfinder can give "great weight" to the "significant factor" of drug-related conduct. *In re K.C., 219 S.W.3d 924*, 927 (Tex. App.–Dallas 2007, no pet.); *see also, In re J.J.W.*, No. 14-18-00985-CV, 2019 WL 1827591, at *6 (Tex. App. Houston [14th Dist. 2019, pet. denied) ("Drug abuse and its effect on the ability to parent can present an endangering course of conduct."); *See In re B.S.W.*, No. 14-04-00496-CV, 2004 WL 2964015 at *9 (Tex. App. – Houston [14th Dist.] 2004, no pet.) (mem. op.)(a parent's continued drug use under court scrutiny demonstrates a parent's inability to care for children and such failure over prolonged period is pattern court can find will likely continue such that permanency can only be achieved through termination and adoption).

Elsea made a disclosure prompting the allegation was Elsea was sexually abused while in Mother's care. The Department also responded to a report by the caregiver that Elsea was under the covers and she was not sure if the foster brother was touching Elsea inappropriately. The Department case worker testified on the subject and stated she spoke to Elsea who said it was nothing, he did not touch her and it was blown out of proportion. After investigation, the case was ruled out, but the caseworker further explained that there was a safety plan and the caregiver went to additional training for parenting children victims of sexual abuse.

In light of these considerations, we conclude evidence implicating the third

factor shows that termination of Mother's parental rights support the best-interest finding.

## Desires of the Child

The mother testified when she had visits with the child while in CPS care, the child put her head in her lap, cried and told her she did not want to leave unless she went with her and wanted her life back to normal. However, the Department documented that Mother's visits with her daughter were cancelled as of April 2021 "due to allegations of sexual abuse of her daughter while in her care." The caseworker stated when Mother's visits were stopped with Elsea after this disclosure, Elsea did not seem to miss the visits. At trial, the Department presented testimony that Elsea was doing well, her behaviors improved tremendously, and she was doing well in school. There was also testimony that Elsea was bonded with her caregiver and called her both by her first name *and* mom.

In light of these considerations, we conclude evidence implicating the first factor shows that termination of Mother's parental rights support the court's best-interest finding.

## The plans for the child by the individuals or agency seeking custody

Placement plans and adoption are relevant but "the lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor." *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). The issue is "whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that termination of the parent's rights would be in the child's best interest even if the agency is unable to identify with precision the child's future home environment." *Id*.

Mother did not state a plan for her child. Her only plan was for the court to

give her more time to participate in inpatient therapy. Because Mother did not make changes to secure a safe home for Elsea, the Department's plan for Elsea was adoption. Elsea's foster caregiver had not affirmatively expressed interest in adopting her; however, the caseworker indicated a legal risk broadcast was sought. The caseworker acknowledged she had not been personally successful with a legal risk broadcast involving a 10-year-old with serious past trauma; however, the Child Advocate believed adoption was possible. The Child Advocate added she personally saw two 10-year-olds successfully placed in permanent homes through legal risk broadcast efforts.

Considering all the evidence already mentioned that established Mother's instability and inappropriate illegal drug behaviors, the trier of fact had sufficient basis to find termination of Mother's parental rights was in Elsea's best interest even if the final home environment for Elsea was not yet identified. *See In re C.H.*, 89 S.W.3d at 28.

*The Acts or Omissions of the Parents, and any excuses*

Evidence supporting termination under the grounds listed in section 161.001(b)(1) also can be considered in support of a finding that termination is in the child's best interest. *See C.H.*, 89 S.W.3d at 27 (holding the same evidence may be probative of both section 161.001(b)(1) grounds and best interest). Specifically, here the trial court could properly consider that Mother did not comply with the court-ordered service plan for reunification with the child. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013).

Mother gave no excuse for why she used illegal drugs during this case and gave no excuse why she failed to secure a safe, stable home. Mother mentioned her own mother was dying, a fact with which we sympathize, but not an excuse for her drug use or failure to maintain a safe, stable home for Elsea, nor a basis to

postpone final determination in this case.

In light of these considerations, we conclude evidence implicating the eighth and ninth factors show that termination of Mother's parental rights support the best-interest finding.

*Conclusion of Best Interest of the Child Analysis*

In summary, the proof under each of the factors discussed above weighs in favor of the trier of fact's firm belief or conviction that termination of Mother's parental rights was in the child's best interest. That proof established Mother was neglectful in her care of Elsea and continued thereafter by engaging in illegal drug use throughout this case. Also, Mother failed to complete basic tasks the court ordered for reunification and failed to show that she made any changes to give the court assurance she was willing and able to provide a safe home. Though her childhood experience in foster care has not been without mishap, she has increasingly bonded with her foster family while in care, made improvements in her behaviors, and her special physical and emotional needs were being addressed. There was no disputed fact of significance to weigh against this proof that supported the fact finder's firm belief or conviction that termination was in Elsea's best interest.

Accordingly, we overrule appellant's third issue.

### III. Conclusion

We affirm the trial court's judgment terminating Mother's parental rights to Elsea.

/s/ Randy Wilson
   Justice

Panel consists of Justices Bourliot, Hassan and Wilson. (Bourliot, J. and Hassan, J., concurring without opinion).